# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DLI ASSETS, LLC, a Nevada limited liability company,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>PIRATE GEM, LLC, a Puerto Rico limited liability company;<br>CARIBBEAN STONE ART, a Puerto Rico limited liability company;<br>SEAMUS BRODIE, an individual,<br><br>　　　　　　　　　　Defendants. | Case No.: 17-cv-02216-BAS-NLS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**[ECF No. 10]** |

Presently before the Court is Plaintiff DLI Assets, LLC's Motion for Default Judgment against Defendants Pirate Gem, LLC, Caribbean Stone Art, and Seamus Brodie. (ECF No. 10.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* FED. R. CIV. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's motion.

## I.　BACKGROUND

DLI Assets is a limited liability company organized and existing under the state of Nevada and registered as a foreign entity authorized to conduct business in the State of

California.  (ECF No. 1, Complaint ("Compl.") ¶ 2.)  Its principal place of business is California.  (*Id.*)  MyBusinessLoan.com ("Lender") is the predecessor in interest to DLI, and DLI is the assignee of record and sole beneficiary of all right, title, and interest to any claim as though brought originally by Lender.  (*Id* ¶ 3.)  Lender is a limited liability company organized and existing under the laws of the State of California.  (*Id.*)

Plaintiff alleges that it entered into a credit line agreement, titled "Credit Line Documents," with Defendants Pirate Gem and Caribbean Stone Art (together, "Co-Borrowers") on February 14, 2015.  (*Id* ¶ 14.)  Further, Plaintiff contends that it also entered into a guaranty agreement, titled "Credit Line Guaranty," in which Defendant Seamus Brodie ("Guarantor") was named as guarantor liable for any defaults or debts incurred by the Co-Borrowers.  (*Id* ¶¶ 28, 29.)  The Co-Borrowers are both limited liability companies organized and existing under the laws of Puerto Rico, and Guarantor, a citizen of Alaska and Puerto Rico, is the sole member of both.  (*Id* ¶¶ 4–10.)  Plaintiff further contends that Co-Borrowers ceased making payments according to the proscribed schedule, and that a balance of $401,049.07 is currently outstanding under the Credit Line Documents.  (*Id.* ¶¶ 14, 23, 24.)

Plaintiff originally commenced this action on October 31, 2017, alleging two claims for breach of contract of the (1) Credit Line Documents against Co-Borrowers and (2) Credit Line Guaranty against Guarantor.  (*See* Compl.)  Plaintiff served Co-Borrowers and Guarantor on November 13, 2017, by personally serving Guarantor, the sole member and assigned agent for service of Co-Borrowers, at his residence.  (ECF No. 6.)  Defendants had until December 4, 2017 to respond, yet failed to do so.  They have otherwise failed to defend themselves in this action.

On January 1, 2018, Plaintiff requested that the Clerk of the Court enter default against Defendants pursuant to Federal Rule of Civil Procedure 55(b).  (ECF No. 7.)  The following day, the Clerk entered default against each of the defendants.  (ECF No. 8.)  After thirty days of entry of default, the Court ordered the Plaintiff to show cause under Local Rule 55.1 why the complaint against the defaulted party should not be dismissed for failure

to move for default judgment within thirty days of entry of default. (ECF No. 9.) Plaintiff subsequently moved for a default judgment against Defendants. (Mot.) The Court now turns to the merits of that motion.

## II. ANALYSIS

### A. Jurisdiction

The Court first addresses whether Plaintiff's Motion for Default Judgment properly asserts personal and subject matter jurisdiction over the Defendants. "The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ir., Ltd. v. Compagnie de Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171-172 (1938)).

#### 1. Personal Jurisdiction

Plaintiff alleges that Co-Borrowers and Guarantor have consented to the jurisdiction of this Court. (Compl. ¶13.) It is generally understood that personal jurisdiction is a waivable right and that there are a variety of legal arrangements by which a party may give "express or implied consent to the personal jurisdiction of the court." *Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703. For example, parties may stipulate in advance to litigate any possible controversies within a particular jurisdiction. *See Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311 (1964). Ultimately, where such an agreement has been freely negotiated and is not "unreasonable or unjust," its enforcement does not offend due process. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

Here, the Terms and Conditions of the Credit Line Master Agreement entered into by Plaintiff and Co-Borrowers includes Section 12.4 titled "Forum Selection Clause and Consent to Jurisdiction." (*See* ECF No. 1-3.) This section provides the following clause: "ANY LITIGATION … SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE COURTS OF THE STATE OF CALIFORNIA OR IN THE UNITED STATES DISTRICT COURT FOR THE COUNTY OF SAN DIEGO." (ECF No. 1-3 at 10.) Further, "BORROWER HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND OF

THE UNITED STATES DISTRICT COURT FOR THE COUNTY OF SAN DIEGO FOR THE PURPOSE OF ANY SUCH LITIGATION." (*Id.*) Seamus Brodie, on behalf of Co-Borrowers, signed this agreement, and Co-Borrowers thereby consented to the jurisdiction of this Court. (ECF No. 1-2 at 3.) The Court concludes that it has personal jurisdiction over Co-Borrowers.

The Court also has personal jurisdiction over Defendant Seamus Brodie. The Credit Line Guaranty includes Section 18 titled "Governing Law; Waiver of Right to Jury Trial; Submission to Jurisdiction." Section 18, subsection (c) states the following: "Guarantor hereby (i) submits to the non-exclusive jurisdiction of the courts of the State of California having situs within the County of San Diego for the purpose of any action or proceeding arising out of or relating to this guaranty, (ii) agrees that all claims in respect of any such action or proceeding may be heard and determined in such State or Federal courts." (ECF No. 1-5 at 4-5.) Seamus Brodie signed this agreement on behalf of himself, and thereby consented to the personal jurisdiction of this Court. The Court has personal jurisdiction over all Defendants in this proceeding.

### 2. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). However, "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between … citizens of different states." 28 U.S.C. § 1332(a),(a)(1). Furthermore, "[f]or purposes of this section … a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Lastly, it has long been established that a party is a citizen of a state in which he is permanently domiciled. *Brown v. Keene*, 33 U.S. 112, 114 (1834).

Plaintiff invokes this Court's diversity jurisdiction. A review of Plaintiff's

Complaint establishes diversity jurisdiction in accordance with all requirements set forth in 28 U.S.C. § 1332. Here, the amount in controversy is $401,049.07, well above the requisite $75,000. There is also diversity among the parties. Plaintiff DLI is a limited liability company organized and existing under the laws of the state of Nevada, and its principal place of business in California. (Compl. ¶¶2, 3.) Defendants Pirate Gem and Stone Art are both limited liability companies organized and existing in Puerto Rico, and their principal place of business is in San Juan, Puerto Rico. (Compl. ¶¶7-10.) Seamus Brodie, sole member of both Pirate Gem and Stone Art, was at all relevant times domiciled in Alaska and Puerto Rico. The Court concludes that there exists full diversity between the parties. Accordingly, this Court has subject matter jurisdiction.

### B. Procedural Requirements for Default Judgment

Obtaining a default judgment is a two-step process under Federal Rule of Civil Procedure 55(b). First, the plaintiff must request and establish that entry of default is appropriate, after which the court clerk enters a default. FED. R. CIV. P. 55(a). Second, the plaintiff must apply to the court for a default judgment if the plaintiff's claim is for a sum that is not certain or a sum that cannot be made certain by computation. FED. R. CIV. P. 55(b). Here, Plaintiff requested an entry of default on January 1, 2017. (ECF No. 7.) Plaintiff demonstrated that Defendants Pirate Gem, Stone Art, and Seamus Brodie were personally served on November 13, 2017, but failed to file an answer or otherwise respond by December 4, 2017. (*Id.*) Plaintiff also represented that the Service Members Civil Relief Act, 50 U.S.C. §§ 3901–4043, is inapplicable to all defendants and so the Clerk of the Court entered default on November 3, 2017. (ECF No. 8.) Because Plaintiff is seeking a sum that is not certain, Plaintiff has appropriately applied to the Court for a default judgment. (Mot.) Accordingly, the procedural requirements for a default judgment against Defendants are satisfied.

### C. Substantive Requirements for Default Judgment

Although the procedural requirements for a default judgment may be satisfied, a district court's decision whether to enter the default judgment is discretionary. *See,*

– 5 –

17cv2216

*e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court considers the "*Eitel* factors": (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Once the clerk has entered a party's default, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing cases). Here, the Court considers each *Eitel* factor in turn below.

### 1. Possibility of Prejudice to Plaintiff

Under the first *Eitel* factor, the court examines whether a plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F.2d at 1471. A plaintiff who is denied a default judgment and is subsequently left without other recourse for recovery has a basis for establishing prejudice. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Castworld*, 219 F.R.D. at 499 (where the court ruled that the plaintiff would suffer prejudice if default judgment was not granted because plaintiff lacked other recourse for recovery). Here, Plaintiff will lack other recourse because Defendants have already demonstrated that they are unwilling to participate in the litigation. Therefore, Plaintiff will suffer prejudice if a default judgment is not entered. Consequently, the first *Eitel* factor favors entering default judgment.

### 2. Merits of Plaintiff's Substantive Claim and the Sufficiency of Complaint

The second and third *Eitel* factors require that a plaintiff state a claim upon which the plaintiff may recover. *PepsiCo*, 238 F. Supp. 2d at 1176. As mentioned, once default is entered against a defendant, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Castworld*, 219 F.R.D. at

– 6 –

498. Here, Plaintiff alleges breach of contract by (1) the Co-Borrowers under the Credit Line Documents and (2) Seamus Brodie ("Guarantor") under the Credit Line Guaranty. (Compl. ¶¶ 36-46.) The Court addresses the sufficiency of each claimed breach of contract.

### a. Breach of Credit Line Documents By The Co-Borrowers

In a breach of contract claim under California law, a plaintiff must allege (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. *Wall Street Network Ltd. v. N.Y. Times, Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2008). Plaintiff alleges that Co-Borrowers and Lender entered into the Credit Line Documents which set out an express obligation for Defendants to repay all amounts advanced pursuant to the agreement. (Compl. ¶ 37.) Copies of the relevant contractual documents are attached to the complaint and these allege that a contract and all requisite obligations existed. (*Id.* ¶ 21.)

Further, Plaintiff claims that Co-Borrowers' default breaches the obligations of the Credit Line Documents, because they failed to repay the amounts owed under the agreement. (*Id.* ¶ 38.) Finally, Plaintiff submits that on account of this breach, Co-Borrowers have caused damages to Lender and thus to Plaintiff in an amount of at least $401,049.07, plus further interest, attorneys' fees, and costs. (*Id.* ¶ 40.) Because the four elements for breach of contract are sufficiently alleged, the Court finds that Plaintiff plausibly states a claim for breach of the Credit Line Documents against Co-Borrowers.

### b. Breach of Credit Line Guaranty By The Guarantor

Plaintiff also alleges that Lender and Guarantor entered into a supplemental contract to the Credit Line Documents, referred to as the Credit Line Guaranty. (Compl. ¶ 28.) Pursuant to this agreement, the Guarantor "unconditionally and irrevocably guarantee[d] to Lender the full and prompt payment when due . . . and performance of all indebtedness, liabilities and other obligations of [Co-]Borrower[s] to Lender under or in connection with the Credit Line Master Agreement." (*Id.*) Plaintiff contends that the Credit Line Guaranty requires Guarantor to pay to Lender all amounts due as a result of Co-Borrowers' default. (Compl. ¶ 42.) Because the Co-Borrowers' indebtedness to Lender has not been satisfied

by Guarantor, Plaintiff alleges that Guarantor breached the Credit Line Guaranty and is thereby liable for the same damages Lender and Plaintiff have suffered as a result of Co-Borrowers' default.

Accordingly, Plaintiff plausibly states a claim for breach of the Credit Line Documents against Co-Borrowers and breach of the Credit Line Guaranty against Guarantor, and these two *Eitel* factors favor entering default judgment against Defendants.

### 3. The Sum of Money at Stake

This *Eitel* factor examines "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, then default judgment is disfavored. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). When proper evidence is presented which shows that the compensation sought is consistent with the terms of the contract and is otherwise appropriate, the court should find that this factor weighs in favor of entry of default judgment. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (S.D. Cal. 2010).

Plaintiff seeks damages in the amount lent to and thereby due by Co-Borrowers under the Credit Line Documents and Guarantor under the Credit Line Guaranty. (Mot. 2:24.) Plaintiff presents copies of invoices and other billing documents which reflect the outstanding balance. These documents indicate that Lender executed its obligations under the contract, and specify the outstanding balance due up to the date that this action was commenced. (ECF 10-2 at 3.) Plaintiff also proffers the declaration of Camille Hayes, former director of compliance of Lender and current Asset Manager of Plaintiff, who states that the balance owed amounts to well over $400,000. (*See* Declaration of Camille Hayes "Hayes Decl." ¶¶ 6–7, ECF No. 10-3.)

The Court concludes that the character of damages Plaintiff seeks are appropriate and proportionate because the amount sought is supported by the contractual documents. Further, the attorneys' fees and costs are reasonable as they were incurred by Plaintiff as a result of Defendants' breach. Thus, this factor does not preclude default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The next *Eitel* factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471–72. Here, the possibility of a dispute is minimal because Defendants have failed to appear in this action and respond to Plaintiff's Complaint. Moreover, upon the entry of default, all well-pleaded facts in Plaintiff's Complaint are taken as true, except those relating to damages. *See PepsiCo*, 238 F. Supp. 2d at 1177. This factor therefore weighs in favor of granting Plaintiff's request for default judgment. *See id.*

### 5. Excusable Neglect

This *Eitel* factor considers whether a defendant's default was the result of excusable neglect. *Eitel*, 782 F.2d at 1472. The concept of excusable neglect takes account of factors such as "the danger of prejudice to the debtor, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assoc's. Ltd. P'ship*, 507 U.S. 380, 395 (1993). When a defendant has been properly served or is aware of the lawsuit, the possibility of excusable neglect is remote, and this factor thus favors default judgment. *See, e.g.*, *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

In this case, Plaintiff served Seamus Brodie at his home both individually and as the sole member and agent for service of process of Pirate Gem and Stone Art. (ECF Nos. 3-6; Declaration of Matthew Eandi "Eandi Decl." ¶ 3, ECF No. 10-4.) Defendants failed to respond without providing any reason for this delay. This delay has resulted in prejudice to Plaintiff who cannot seek any other recourse for damages. There is also no evidence that this failure to respond was due to any good faith efforts by Defendants. Because Defendants were properly served with both the summons and Complaint and Defendants failed to respond or otherwise defend themselves to this day, the Court concludes it is unlikely that Defendants' default was due to excusable neglect. *See Streeter*, 438 F. Supp.

2d at 1072. Consequently, this *Eitel* factor supports the entry of default judgment.

### 6. Public Policy Favoring a Decision on the Merits

The final *Eitel* factor requires the Court to consider the strong federal policy in favor of making decisions on the merits. *Eitel*, 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id.* However, "the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive." *Streeter*, 438 F. Supp. 2d at 1065. Where a defendant's "failure to answer the [c]omplaint makes a decision on the merits impractical, if not impossible," this factor does not preclude a court from entering default judgment. *See id.* Here, a ruling on the merits is not practical and may be even impossible because Defendants have failed to respond to Plaintiff's Complaint. The Court therefore finds this final factor does not preclude default judgment.

Overall, the *Eitel* factors weigh in favor of entering default judgment against Defendants. Thus, the Court will enter default judgment because the procedural and substantive requirements for doing so are satisfied.

### D. Relief Sought

Because default judgment is appropriate, the Court addresses the relief sought by Plaintiff. Plaintiff requests damages, pre-judgment interest calculated at the adjusted contractual rate, post-judgment interest at the contractual interest rate and accruing as of the date of Default Judgment until the date of its satisfaction, and attorneys' fees and costs. (Mot. at 2:24-3:1.) The Court addresses each request.

#### 1. Damages

Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c), *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962). According to its Motion for Default Judgment, Plaintiff seeks to recover $475,284.71 in damages. (Mot. at 2:23-24.) This amount is proffered by Camille Hayes, former director of compliance of Lender and current Asset Manager of Plaintiff. (See Hayes Decl.) This request is not equal to the damages prayed for in the original complaint, and exceeds the original amount of $401,049.07 by

– 10 –

$74,235.64. (Compl. ¶¶ 40, 46.) Because a default judgement must not exceed the amount demanded in the pleadings, the Court grants relief in the amount equal to that originally prayed for: $401,049.07.

### 2. Pre- and Post-Judgment Interest

Additionally, Plaintiff seeks to recover pre- and post-judgment interest. "In diversity actions, state law determines the rate of prejudgment interest, and post-judgment interest is governed by federal law." *American Tel. & Tel. Co. v. United Computer Systems, Inc.*, 98 F.3d 1206, 1209 (9th Cir. 1996) (citing *Northrop Corp. v. Triad Int'l Marketing, S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988)). The Court thus addresses each form of interest separately.

#### a. Pre-judgment Interest

Plaintiff requests pre-judgment interest in the amount of $34,923.66, calculated at the adjusted contractual rate of 18% per annum of the $475,284.71 in damages requested. (Mot. 2:22-26.) "Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict, or a new obligation." CAL. CIV. CODE § 3289(a). Because the Court has awarded damages of $401,049.07 as requested in the original complaint, the adjusted amount of pre-judgment interest to be awarded is $29,468.87.

#### b. Post-Judgment Interest

Plaintiff also requests post-judgment interest at the contractual interest rate of 18% per annum. (Mot. 2:27-28.) The apparent basis for this request is that the Credit Line Master Agreement defines the "interest rate" as "index plus 17.99% per annum, not to exceed the maximum interest rate allowed by law." (Compl. ¶20.) The Court, however, declines to award this rate and finds that Plaintiff is entitled to the statutory rate under 28 U.S.C. § 1961.

Under 28 U.S.C. § 1961, "post-judgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). The post-judgment interest rate under the statute is set at "a rate equal to

the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). While parties can contract around the rate specified in 28 U.S.C. § 1961(a), they must do so explicitly. *See Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (*citing Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1107-08 (9th Cir. 1998)). To overcome the statutory post-judgment interest rate, a contractual provision must use "clear, unambiguous and unequivocal language." *Crosthwaite v. Tim Kruse Constr., Inc.*, No. 13-cv-00496-JSW (NJV), 2014 U.S. Dist. LEXIS 131196, at *20 (N.D. Cal. May 9, 2014) (quoting *FCS Advisors, Inc. v. Fair Finance Co.*, 605 F.3d 144, 147 (2d Cir. 2010)). Where a provision fails to expressly state that the parties have agreed to a specific post-judgment interest rate, the provision does not overcome the statutory default. *Id.* at *20–21 (finding insufficient contractual provision that set a 10% interest rate for unpaid contributions in the event of late payment or delinquency). Here, Plaintiff makes no attempt to argue that the contractual language overcomes Section 1961's post-judgment interest. In the Court's view, the contractual provision on which Plaintiff relies lacks clear and unequivocal showing that it overcomes Section 1961's post-judgment interest. The Court, therefore, declines to award post-judgment interest at the contractual interest rate and awards post-judgment interest according to the statutory rate.

### 2. Attorneys' Fees

Plaintiff also seeks $3,913.00 for attorneys' fees. "A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc, v. Estate of Bisop*, 22 F.3d 877, 883 (9th Cir. 2000). California Civil Code § 1717 provides that where "the parties contractually obligate themselves" to compensate each other, attorneys' fees may be awarded. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001). Both the Credit Line Documents and the Credit Line Guaranty set California law as the operative law of the agreements. (ECF No. 1-3 at 11 §12.11; ECF No. 1-5 at 4 §18(a).) The Credit Line Documents also provide for

– 12 –

recovery of costs and attorneys' fees. Section 12.18 of the Agreement's terms and conditions states that Defendants shall "reimburse Lender on demand for all reasonable costs, fees, and expenses incurred . . . or for which Lender becomes obligated in connection with the collection of the Obligations or enforcement of this agreement" and if Plaintiff "employs counsel . . . to represent Lender in any litigation … in any way or respect relating to this Agreement . . . the costs and expenses incurred . . . shall be part of the Obligations, payable by Borrower to Lender on demand." (ECF 1-3 at 11.) Section 13 of the Credit Line Guaranty also provides for recovery of all reasonable costs and expenses of the Lender, and reasonable fees and disbursements of counsel, in connection with the enforcement of the Guaranty. (ECF No. 1-5 at 4.) Because Plaintiff has successfully stated claims for relief based on breach of the agreements, they are entitled to reasonable attorneys' fees in this action under these contractual provisions. *See Animal Blood Bank, Inc. v. Hale*, No. 2:10-cv-02080 KJM KJN, 2012 U.S. Dist. LEXIS 165135, at *46 (E.D. Cal. Nov. 19, 2012).

Under California law, the amount of "[r]easonable attorney's fees shall be fixed by the court." CAL. CIV. CODE § 1717(a). "[A]scertaining the fee amount is left to the trial court's sound discretion," as "[t]rial judges . . . are in the best position to assess the value of the professional services rendered in their courts." *Ellis v. Toshiba Am. Info. Sys., Inc.*, 218 Cal. App. 4th 853, 882 (Cal. Ct. App. 2013) (citations omitted). Consistent with Section 1717(a), "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Reg'l Planning Comm'n of L.A. Cty.*, 185 Cal. Rptr. 145, 148 (Cal. Ct. App. 1982) (citations omitted). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' *i.e.*, the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 997 P.2d 511, 518 (Cal. 2000). As to the computation of hours, "trial courts must carefully review attorney documentation of hours expended." *Ketchum v. Moses*, 17 P.3d 735, 743 (Cal. 2001). The Court must then exclude "hours that were not reasonably expended in pursuit

of successful claims," *Harman v. City & Cty. of S.F.*, 69 Cal. Rptr. 3d 750, 760 (Cal. Ct. App. 2007) (citation omitted), "[a]ttorney time spent on services which produce no tangible benefit for the client," *Meister v. Regents of Univ. of Cal.*, 78 Cal. Rptr. 2d 913, 923 (Cal. Ct. App. 1998), and "duplicative or excessive" work, *Graciano v. Robinson Ford Sales, Inc.*, 50 Cal. Rptr. 3d 273, 290 (Cal. Ct. App. 2006). In addition, the Court must determine whether the hourly rate underlying the fee request is reasonable.

Here, Plaintiff submits the declarations and invoices of counsel, Angela M. Lipscomb, Esq. and Matthew J. Eandi, Esq. (*See* ECF Nos. 10-3, 10-4.) Lipscomb seeks fees for approximately 8 hours of work at an hourly rate of $295.00. Eandi seeks fees for approximately 4.5 hours of work at an hourly rate of $275.00. Overall, the Court finds that the time spent and the hourly rate sought are reasonable. *See, e.g., Phillips 66 Co. v. Cal. Pride, Inc.*, No. 1:16-cv-01102-LJO-SKO, 2017 WL 2875736, at *15 (E.D. Cal. July 5, 2017) (observing that reasonable hourly rate falls within the range of $250 to $400 per hour). Accordingly, the Court awards attorneys' fees of $3,913.00.

### 3. Costs

Lastly, Plaintiff seeks $680.00 in costs. Unlike the issue of attorneys' fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)" as "a general proposition." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g., United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law . . . under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorneys' fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters,*

*Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." 7 *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012). "Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Id.* "It comes as little surprise, therefore, that costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Id.* (citation omitted).

Here, the declarations and invoices submitted by Angela M. Lipscomb and Matthew J. Eandi respectively show costs of $180.00 and $500.00. (*See* ECF Nos. 10-3, 10-4.) The $180.00 in costs Lipscomb seeks are for service of process fees. These costs are properly recoverable by Plaintiff. *See, e.g., Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)). The $500.00 in costs Eandi seeks break down into the $400.00 fee for filing the complaint in this court and $100.00 for a "litigation calendaring service monthly access fee" assessed four times at $25.00 per assessment. Although the $400.00 is properly recoverable as a filing fee, the $100.00 is not because it does not fall within the scope of any category enumerated in Section 1920. Accordingly, the Court grants costs in the total amount of $580.00.

### III. CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS** Plaintiff's motion for default judgment. (ECF No. 10.)
2. The Clerk of the Court **SHALL ENTER JUDGMENT** in favor of Plaintiff and against Defendants for damages of $401,049.07 in damages plus $29,468.87 in pre-

judgment interest. Plaintiff is also awarded post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961.

3. Plaintiff is awarded $3,913.00 in attorneys' fees and $580.00 in costs, to be paid by Defendants.

4. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

DATED: April 20, 2018

Hon. Cynthia Bashant
United States District Judge